No. 28,817.

D. A. VORAN, for Himself and on behalf of 114 Other Persons similarly situated, *Plaintiff*, v. JOHN M. WRIGHT, as County Treasurer of Shawnee County, and O. B. EDDY, as County Clerk, etc., *Defendants*.

(281 Pac. 938.)

Opinion filed November 9, 1929.

*Clad Hamilton, Donald A. Campbell* and *Frank Flack,* all of Topeka, for the plaintiff.

*Eugene S. Quinton,* of Topeka, for the defendants.

*Chester Stevens,* of Independence, *Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson,* all of Topeka, *Elmer W. Columbia,* of Oswego, *L. E. Goodrich,* of Parsons, and *Willard Brooks,* of Wichita, as *amici curiæ.*

The opinion of the court was delivered by

HUTCHISON, J.:   This is an original proceeding in mandamus brought by D. A. Voran, a stockholder in the Fidelity Savings State Bank of Topeka for himself and for and on behalf of one hundred and fourteen other stockholders in that bank against the county treasurer and county clerk of Shawnee county to compel them to accept and receipt for the tender made by the bank of $1,001.68, as and for the first half of the taxes of the bank for its stockholders for the year 1928 calculated upon the intangible property tax rate instead of the amount levied and assessed against the bank and its stockholders computed on the general tangible property, or *ad valorem* rate of taxation, the tender being made and refused December 19, 1928.

Plaintiff avers as reasons for the issuance of such writ that certain clauses and provisions of chapter 326 of the Laws of 1927 under which the tangible property rate was levied and assessed against the bank and its stockholders was in violation of the constitution of the United States in that it was taking property without due process of law (Bill of Rights, amendment 14), and in violation of the recent amendment to section 1 of article 11 of the state constitution if it is to be construed as denying the bank, the

plaintiff and his fellow stockholders, the privilege of being taxed at the intangible rate. Plaintiff further avers that there is unjust, arbitrary, capricious and unreasonable discrimination under the provisions of chapter 326, Laws of 1927, in that under a recent decision of the federal court national banks and their stockholders are relieved from the assessment under the tangible property rate, and also that the act itself relieves other moneyed corporations and individual citizens engaged in like business as the state bank in which the plaintiff is a stockholder from the burden of assessment and levy under such rate. Plaintiff further avers that on March 1, 1928, more than 97 per cent of the personal property of the Fidelity State Bank was invested in intangible securities.

An alternative writ of mandamus was issued and the defendants filed answer thereto on return day.

Defendants in their answer admit they are the officers as alleged, that plaintiff and those for whom he pleads are stockholders as alleged, and that the tender was made as alleged, but deny generally all other allegations of the petition. They especially "deny that they refused to accept said tender so alleged to have been made by the bank in behalf of its stockholders and issue receipt therefor upon certain invalid and unconstitutional provisions of chapter 326 of the Laws of 1927, but did urge and claim that the said plaintiff and his fellow stockholders were, by virtue of the laws of Kansas controlling, to wit: Chapter 276 of the Session Laws of 1925 under legal obligation to pay the sum of $3,021.73 being the half tax claimed and demanded by the defendants upon the value of said stock computed at the general tangible property rate."

Defendants further aver that the general property tax rate of the city of Topeka for the year 1928 was $3.50 per hundred dollars valuation and as such was levied and assessed against the plaintiff and his fellow stockholders in the bank as provided by law might be done under the amendment to the constitution, article 11, section 1, and under and pursuant to chapter 276 of the Laws of 1925. Defendants further aver that the bank of which the plaintiff is a stockholder furnished the assessing officer under oath a list of all the stockholders and the number of shares of each and all the requirements set forth in chapter 276, Laws of 1925, as a basis for the assessment so made by the assessor, and that according to such information so furnished under said law the correct amount of the first half of the taxes for the year 1928 was $3,021.73, the amount

demanded by these defendants when the tender was made and is still demanded by them.

The pleadings make an issue of law, no evidence being offered. Chapter 276 of the Laws of 1925, which amended and repealed R. S. 79-1101, prescribes the method of assessing shares of stock issued by national and state banks and other banking organizations, assessing to the shares of stock the proportionate share of the value of the capital stock, surplus and undivided profits, less certain allowance for real estate. This is the act under which the assessment complained of was made. It became effective March 17, 1925. It provided that: "Shares of stock issued by national banks and by state banks and savings banks, or other banking organizations, and by loan and trust companies, located in this state, shall be assessed to the individual shareholders at the place where the particular bank, or loan and trust company is located." It amended and repealed R. S. 79-1101, which was section 1 of chapter 306 of the Laws of 1919. The only change made, however, by the amendment was the allowance of one-half of the amount of the combined capital and surplus instead of one-third, to be deducted from the original gross valuation of the shares of stock for real estate owned by the bank. The act of 1919 in turn was an amendment of chapter 84, Laws 1891, and it in turn an amendment of chapter 34 of the Laws of 1876. The two earlier enactments differ greatly in phraseology from the two later ones, but they outline the same general method of assessing the shares of stock of banks and other moneyed institutions engaged in the same or similar business. These four laws have frequently been upheld as constitutional and valid, among which decisions are the following: *National Bank v. Fisher,* 45 Kan. 726, 26 Pac. 482; *Dutton v. National Bank,* 53 Kan. 440, 36 Pac. 719; *Bank v. Lyman,* 59 Kan. 410, 53 Pac. 125; *Bank v. Geary County,* 102 Kan. 334, 170 Pac. 33; *State Bank v. State Tax Commission,* 114 Kan. 267, 217 Pac. 304; *Ranchmen's Trust Co. v. Duncan,* 114 Kan. 308, 219 Pac. 523.

A most exhaustive study and complete and thorough discussion of the many features involved in the assessment of the shares of stock of banks and loan and investment companies under the statute of 1891 were made by Justice Burch in the Geary county case above cited. The first paragraph of the syllabus is as follows:

"The tax contemplated by section 11236 of the General Statutes of 1915, relating to taxation of national banks, state banks, and loan or investment

companies, is a tax on shares of stock in the hands of stockholders, and not a tax on capital stock or assets, the property of the corporation."

Continuing, the opinion points out the method of arriving at the true value of the shares of stock and separates the deductions allowed from those not allowed under the law. It also sets out the reason for this law, and the grouping of national and state banks and other moneyed corporations engaged in like business.

National banks, being governmental agencies, would not be subject to a tax imposed by the state, and the only way to reach such property was by the indirect method sanctioned by act of congress. It is argued that the state could have taxed the shares of stock in such banks without the permission thus granted by congress, but it has been granted with requirements and restrictions, and this state and all others have attempted to comply with the restrictions and terms imposed rather than try to accomplish the same in disregard of such consent, even if it could have been so done.

Instead of taxing the national bank on the valuation of its property, the act authorizes the state to tax its shareholders on the basis of the true value of the shares of stock, but the act prescribes that such tax shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the state coming into competition with the business of national banks. This act is known as section 5219 of the Revised Statutes of the United States, which was amended in 1923, again in 1926, and is as follows:

"Sec. 5219. The legislature of each state may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several states may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) according to or measured by their net income, provided the following conditions are complied with:

"1. (a) The imposition by any state of any one of the above four forms of taxation shall be in lieu of the others, except as hereinafter provided in subdivision (c) of this clause.

"(b) In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks: Provided, That bonds, notes or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section." (44 U. S. Stat., ch. 88.)

Our statute, chapter 276 of the Laws of 1925, above quoted, in an

attempt to literally comply with the provisions of this act of congress, grouped together national banks, state banks, savings banks and other banking organizations and loan and trust companies, and provided for the assessment to be made against all the individual shareholders in all such organizations. From this grouping of banking institutions whose stockholders are to be assessed and taxed, there has arisen a confusion as to classes for taxation, especially under the amendment to section 1 of article 11 of the Kansas constitution, which is as follows:

"The legislature shall provide for a uniform and equal rate of assessment and taxation, except that mineral products, money, mortgages, notes and other evidence of debt may be classified and taxed uniformly as to class as the legislature shall provide. All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, and personal property to the amount of at least two hundred dollars for each family, shall be exempted from taxation." (Laws 1923, ch. 255.)

A careful reading of this amendment compels the conclusion that the classification therein permitted is of property and not of the owners thereof, as is sometimes urged in connection with our grouping of stockholders, of merchants and manufacturers, and of others in our statutes. An inadvertent expression of this kind is found in the opinion in the case of *Davis-Wellcome Mortgage Co. v. Haynes*, 119 Kan. 1, 237 Pac. 918, which was evidently not so intended and was not pertinent or essential to the decision therein reached. This amendment was adopted in 1924 and the new part of the section is that which permits the classification of mineral products, money, mortgages, notes and other evidence of debt, but requires that such property be taxed uniformly as to class, as the legislature may provide.

At the 1925 session of the legislature two acts were passed classifying property for taxation: chapter 273 included real-estate mortgages only and imposed a registration fee as the only tax to which they would be subject. The other act, chapter 277, classified money and credits and imposed an annual tax of 25 cents on each $100 of fair cash value thereof, and exempted them from all other taxation. One section of this act was amended by chapter 278, which extended the definition of money and credits, but made no other change. Section 2 of chapter 277 contains the following provision:

"*Provided,* That nothing in this act shall be construed to apply to money or credits, as herein defined, belonging to persons or to corporations incorporated under the laws of this state, the taxation of which is otherwise provided for by law, or to any national banking association, or the stock thereof."

It is urged by the defendants that there is no conflict between these acts as to taxation of money and credits, and chapter 276, which was enacted at the same session and became effective a few days later, but if for any reason there should appear to be any conflict, then the act which became effective later will repeal the former acts by implication, and chapter 276 would be controlling. We think that where different acts affecting the same subject matter are enacted at the same session of the legislature and take effect about the same time, they should all be considered together to ascertain the real legislative purpose and intent.

"Laws enacted by the same legislature about the same time and concerning the same subject matter, being *in pari materia,* are to be taken and considered together in order to determine the legislative purpose and arrive at the true result." (*In re Hall, Petitioner,* 38 Kan. 670, 17 Pac. 649. See, also, *Railway Co. v. Railway Commissioners,* 85 Kan. 229, 116 Pac. 896; *State, ex rel., v. City of Lawrence,* 98 Kan. 808, 160 Pac. 217.)

But both these chapters, 277 and 278, were repealed and amended at the 1927 session of the legislature by chapter 326, the first and second sections of which are as follows:

"SECTION 1. That for the purpose of this act the term 'money' shall mean and include gold and silver coin, United States treasury notes, bank notes and other forms of currency in common use. The term 'credits' shall mean and include notes, mortgages, foreign stocks, bonds, annuities, royalties, contracts, copyrights, claims secured by deeds and every liquidated claim and demand for money, shares of stock in building and loan associations, other than permanent stock, or other valuable thing, except notes or obligations secured by mortgages on real estate, which mortgages have been recorded in this state, and registration fee or tax paid thereon, and shares of stock upon which taxes are otherwise payable under the laws of this state: *Provided,* That nothing in this act shall be construed to· apply to money or credits, as herein defined, belonging to persons, partnerships, associations or corporations, the taxation of which is otherwise provided for by law, or to any national banking association, or the stock thereof, or to moneyed capital in the hands of individual citizens of this state coming into competition with the business of national banks: *Provided further,* That bonds, notes or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking, loan or investment business and representing merely personal investments, not made in competition with the business of national banks, shall not be deemed such moneyed capital.

"SEC. 2. That money and credits as hereinbefore defined are hereby separately classified for taxation purposes and shall hereafter be taxed annually at the rate of five mills on the dollar of the actual value thereof; and hereafter such money and credits shall be exempt from all other taxation."

It will be observed in this act as well as in chapter 277, Laws 1925, there is a definite effort to avoid interfering with the provisions of

chapter 276 of the Laws of 1925, which may be considered as an effort to support and sustain the taxing provision of chapter 276. It not only provides that nothing in the act shall be construed to apply to money or credits belonging to persons, partnerships, associations or corporations, the taxation of which is otherwise provided for by law, but also specifically exempts it from applying to national banks and its stockholders and individuals whose moneyed capital comes into competition with the business of national banks. The special emphasis here exercised, to avoid any possible danger of having the act construed as general, is quite in harmony with the provisions of section 5219 of the federal statutes. It will be noted that section 5219 does not exact that stockholders of national banks are not to pay a greater rate than stockholders in other banking institutions, but they are not to pay a greater rate than individual citizens whose moneyed capital comes into competition with the business of national banks. Our chapter 276 only reaches corporations having capital stock. The fact that it does not cover the whole field does not affect its validity. It is all right as far as it goes, but a scrupulous compliance with its provisions will not meet the full protection exacted for the stockholders of national banks. Individuals and partnerships do not issue shares of stock, and must therefore be otherwise taxed. Chapter 326 also mentions and exempts corporations, the taxation of which is otherwise provided for by law. There are several such, the merchants and manufacturers for instance, and those of a general class provided for in R. S. 79-310. This last mentioned statute was the one under consideration in connection with the mortgage registration act, chapter 273, and the intangible taxation act, chapter 277, in the case of *Davis-Wellcome Mortgage Co. v. Haynes*, supra, where it was held that an incorporated mortgage company and manufacturers and merchants were not entitled to the benefits of the intangible taxation act because their taxation was otherwise provided for by law, viz., R. S. 79-310 and R. S. 79-1001 to 79-1007. Chapter 277 was upheld as constitutional, but the mortgage company was held to be entitled to a deduction from its capital stock of the amount it had invested in real-estate mortgages, by virtue of the mortgage registration act. This case is referred to in the case of *Central Nat. Bank v. McFarland*, 20 F. (2d) 416, where the federal court held there was an unjust discrimination in applying the *ad valorem* rate of taxation to stockholders of the plaintiff national bank, and the intangible and mortgage registration

rate to others whose moneyed capital came in competition with the business of the national bank. This decision was rendered February 2, 1927, in the district court, Kansas, first division, and was later affirmed by the circuit court of appeals, eighth circuit, 26 F. (2d) 890. This decision which relieves the stockholders of national banks from the obligation of paying the *ad valorem* rate of tax is one of the discriminations plead and urged by the plaintiff as unjust, capricious and unreasonable when the plaintiff and his fellow stockholders are expected and required to pay at that rate. But defendants contend that this decision should not be followed because it attempted to construe and determine the validity of a state statute, which is the special province and duty of the state courts, and that federal courts should accept the construction placed thereon by the state courts; and, further, that the state courts are not required to accept and follow such ruling when made prior to any ruling thereon by the state courts. There is no question but that the state courts would have a right to place a different construction upon one of its own laws than that given it by the federal court, and continue to adhere to such construction, but in a matter of this character, would that do away with the discrimination of which complaint is made? The stockholders of the national banks are relieved from the payment of the *ad valorem* rate of taxation because of discrimination in violation of section 5219, federal statutes. They would continue to adhere to that favorable ruling and, whether right or wrong, their failure to pay would make a discrimination between them and the stockholders of the state banks. Besides, the matter determined in the federal court was not wholly the construction of a state statute, but the application of its terms to the requirements of an act of congress concerning an instrumentality of the federal government—a national bank.

"A bill to enjoin the collection of taxes assessed against a national bank and against the stockholders on their shares, on the ground that the taxation was double, that the stockholders were not allowed to set off debts against the valuation of their shares, and that the board of equalization illegally increased the assessment, raises the federal question of the validity of the tax, under Rev. St. U. S. § 5219, prescribing the method in which national bank shares may be taxed." (*Sioux Falls Nat. Bank v. Swenson et al.,* 48 Fed. 621, syl. ¶ 1.)

Only a few weeks after this decision in the Central National Bank case was handed down by Judge Pollock, a decision was rendered by the supreme court of the United States, opinion written by Justice Stone, in the case of *First National Bank v. Hartford,* 273 U. S. 548,

on appeal from the supreme court of Wisconsin, where a similar statute exempted certain intangible property from taxation, but continued to tax shares of bank stock at the *ad valorem* rate. It was there held—

"The validity, under Rev. Stats. § 5219, of a state tax on national bank shares at a greater rate than that assessed on other moneyed capital depends upon whether or not the moneyed capital thus favored is employed in such a manner as to bring it into substantial competition with the business of national banks." (Syl. ¶ 2.)

"The requirement of approximate equality in taxation (R. S. § 5219) is not limited to moneyed capital invested in state banks or to competing capital employed in private banking; it applies whenever capital, substantial in amount compared with the capitalization of national banks, is employed in a business, or by private investors, in the same sort of transactions as those in which national banks engage and in the same locality in which they do business." (Syl. ¶ 3.)

"In this case the evidence shows substantial competition with national banks by untaxed capital in the business of making loans and selling credits, and also by capital of private individuals who, as investors of surplus funds, were engaged in lending money at interest on real-estate mortgages and other evidences of indebtedness, normal to banking." (Syl. ¶ 6.)

On the same day another decision was handed down by the supreme court of the United States in the case of *Minnesota v. First National Bank*, 273 U. S. 561, to the same effect, where by statute the state of Minnesota assessed the shareholders of national banks at 40 per cent of the full value of the stock, but for money and credits only a rate of 3 mills. It was held to be discriminatory and in violation of section 5219. See, also, *Georgetown Bank v. McFarland*, 273 U. S. 568, where in consideration of a Kentucky statute a different result was reached on the evidence that was before the court, but the decision in the Wisconsin case, above cited, was approved. A similar holding was made by the same court in a recent case from Montana, *Mont. Bank v. Yellowstone County*, 276 U. S. 499:

"A substantial discrimination against national banks in favor of incorporated state banks resulting from taxation of national bank shares upon a valuation equal to that of the assets of the bank, including bonds and like securities of the United States, while the shares of the state banks are not taxed and the state banks themselves are taxed only on the value of their assets after excluding United States bonds and securities, violates Rev. Stats., §5219." (Syl. ¶ 1.)

"A systematic and intentional omission to tax a material portion of other moneyed capital in the state may render invalid a taxation of national bank

shares, under Rev. St. § 5219, equally with a similar omission to tax by legislative enactment." (*Hannan v. First Nat. Bank,* 269 Fed. 527, syl. ¶ 3.)

"The former decisions of this court do not sustain the proposition that national bank shares may be subjected, under the authority of the state, to local taxation where a very material part, relatively, of other moneyed capital in the hands of individual citizens within the same jurisdiction or taxing district is exempted from such taxation.

"While exact uniformity or equality of taxation cannot be expected under any system, capital invested in national bank shares was intended by congress to be placed upon the same footing of substantial equality in respect of taxation by state authority as the state establishes for other moneyed capital in the hands of individual citizens, however invested, whether in state bank shares or otherwise." (*Boyer v. Boyer,* 113 U. S. 689, syl. See, also, *First Nat. Bank v. Anderson,* 269 U. S. 341 [Iowa].)

"The Nebraska revenue law, classifying property as tangible and intangible, and providing that shares of stock in banks, banking associations and trust companies shall be listed at their true value and assessed upon the full millrate levy, while other intangible property, with certain exceptions, is required to be listed at its true value and assessed at 25 per cent of the mill-rate levy, is invalid as to national banks, because it conflicted with an act of congress, as then existing, forbidding states to tax shares of stock in national banks at a greater rate than is assessed on other moneyed capital, and with national banks eliminated is, as to state banks, unconstitutional, because it conflicts with our state constitution requiring taxes to be uniform as to class." (*Central Nat. Bank v. Sutherland,* 113 Neb. 126, syl. ¶ 1.)

We are compelled to conclude that the provisions of chapter 326 of the Laws of 1927 are in violation of the requirements of U. S. Rev. Stat. 5219, and that they permit and authorize an unjust discrimination between the stockholders of national banks and other corporations and individual citizens having moneyed capital coming into competition with the business of national banks.

We further conclude that the privilege accorded a mortgage company by the ruling in the case of *Davis-Wellcome Mortgage Co. v. Haynes,* supra, to deduct from its capital stock the real-estate mortgages owned by it that had been registered under the provisions of chapter 273, Laws of 1925, is a discrimination between such mortgage company and the stockholders of a state bank, and such an unfair and unreasonable discrimination as to justify plaintiff stockholders in objecting thereto and complaining thereof.

Plaintiff contends that chapter 326 of the Laws of 1927 is unconstitutional because it violates the requirement of section 1, article 11, of the constitution of Kansas in that the kinds of property therein classified are not taxed uniformly as to class, and that some

owners of such property are deprived and denied the benefit of the intangible rate thereunder. The old constitutional provision only required a uniform and equal rate of assessment and taxation, and some acts were upheld under its requirement when different groups of property owners were assessed differently in reaching an *ad valorem* basis of actual value. And, as before stated herein, there did grow up a confusion as to such grouping of owners as to business, shareholders and corporations with capital stock which was tolerated and even sanctioned. But no confusion can longer exist since the amendment. There can be no classification except that of property, and that of the kinds named in the amendment, viz., mineral products, money, mortgages, notes, and other evidences of debt.

The chapter under consideration only attempts to include in the class with which it deals money and credits. If under the provisions of this act money and credits are not classified and taxed uniformly as to class, if there exists any favoritism or discrimination in the taxation thereof, the law is unconstitutional. It should not be difficult to determine whether or not the rate is "uniform and equal," and whether or not the money and credits are "classified and taxed uniformly as to class."

Judge Brewer expressed the judgment of this court in 1884, when the only requirement was that the rate be uniform and equal, that the law taxing cattle driven into the state for grazing purposes after the 1st of March and before the 1st of December, when it did not tax all other property coming into the state between those dates, was not constitutional. (*Graham v. Comm'rs of Chautauqua Co.*, 31 Kan. 473, 2 Pac. 549.) In 1887 it was held by this court in *M. & M. Rly. Co. v. Champlin, Treas.*, 37 Kan. 682, 16 Pac. 222, that a distinction made in the taxation of property in the township belonging to residents and nonresidents was unconstitutional and void. The same conclusion was reached in *In re Page*, 60 Kan. 842, 58 Pac. 478, concerning an act making a distinction for purposes of taxation between the property of licensed and nonlicensed insurance companies in the state. In *Hamilton v. Wilson*, 61 Kan. 511, 59 Pac. 1069, a law taxing judgments, exempting those secured by mortgage, was held invalid. In the case of *Wheeler v. Weightman*, 96 Kan. 50, 149 Pac. 977, the former mortgage registration act was held unconstitutional before the constitutional amendment of 1924. The following paragraph from the opinion in that case forcibly and clearly defines equality and uniformity.

"The essentials are that each man in city, county and state is interested in maintaining the state and local governments. The protection which they afford and the duty to maintain them are reciprocal. The burden of supporting them should be borne equally by all, and this equality consists in each one contributing in proportion to the amount of his property. To this end all property in the state must be listed and valued for the purpose of taxation, the rate of assessment and taxation to be uniform and equal throughout the jurisdiction levying the tax. The imposition of taxes upon selected classes of property to the exclusion of others, and the exemption of selected classes to the exclusion of others, constitute invidious discriminations which destroy uniformity." (p. 58.)

Further definitions are unnecessary. The terms used are not technical or professional. They are of common and everyday use.

Is the taxation under chapter 326 of money and credits belonging to the stockholders of a state bank at $3.50 per hundred uniform as to class when individual citizens and corporations are taxed on the same kind of property at five mills on the dollar? There can be but one answer, and that answer compels the conclusion that the act is unconstitutional. This conclusion applies only to chapter 326 of the Laws of 1927, the intangible taxation act, and not to the mortgage registration act, chapter 273 of the Laws of 1925, nor chapter 276 of the Laws of 1925.

It has been impossible to treat in this opinion all the points raised and so ably presented in the briefs of both parties hereto and by the various attorneys who so kindly assisted as friends of the court. We have purposely omitted the other points of discrimination and other ground for holding the law unconstitutional which were urged by the plaintiff. We have also purposely refrained from extending the opinion to some kindred subjects which may be involved in other similar cases, but strictly speaking are not involved in this. Many good suggestions were made by a number of attorneys with the evident alternative purpose of saving the intangible law, if possible, and, if not, showing how the defects therein might be remedied. Now, since they cannot accomplish the first purpose, we hope they may be useful and helpful suggestions for remedial legislation on the subject.

The judgment of the court is that the plaintiff and his fellow stockholders should not be required to pay taxes at the ad valorem rate but should be allowed the benefit of the intangible rate, and deductions accordingly, and since the amount tendered is admitted to be the correct amount, calculated on that basis, the judgment is in favor of the plaintiff, and defendants are ordered and directed to accept the amount of taxes so tendered and issue a receipt therefor

in full, for the first half of the taxes assessed against the plaintiff and his fellow stockholders of the Fidelity Savings State Bank, of Topeka, Kan., for the year 1928.

The writ is allowed.

HARVEY, J., dissenting.