No. 31,490

THE GIRARD GAS COMPANY, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CRAWFORD, and CHARLES C. EVERITT, County Treasurer, etc., *Appellees*.

(32 P. 2d 226.)

Opinion filed May 5, 1934.

*C. O. Pingry, Carl Pingry*, both of Pittsburg, and *Robert D. Garver*, of Kansas City, Mo., for the appellant.

*Robert S. Lemon*, county attorney, and *T. J. Karr*, assistant county attorney, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover taxes paid under protest. Judgment was rendered for defendants, and plaintiff appeals.

The taxes were for the year 1929. An attempt was made to increase the valuation of plaintiff's property, and taxes were extended on the tax roll accordingly. On December 20, 1929, plaintiff paid the full amount of the first half of the taxes, but protested the portion depending on the increased valuation. On June 17, 1930, plaintiff took the same course with respect to the second half of the taxes.

On April 1, 1930, plaintiff commenced an action to recover the protested portion of the first half of the taxes. The action was

pending and undetermined when the cash-basis law of 1933 took effect. On May 13, 1933, plaintiff presented a claim under the cash-basis law for the total amount of protested taxes. The claim was disallowed by the county board, and on May 17 plaintiff perfected an appeal to the district court. The pending action was consolidated for trial with the appeal.

Plaintiff duly made its property statement on the blank provided for the purpose, and returned it to the county assessor. Plaintiff was a corporation having a capital stock of 500 nonpar shares. The statement gave the value as $25,000. The statement returned the value of the corporate property at $26,956. This sum being greater than the returned value of the shares, there was no excess to be carried into the total amount of taxable value. The county assessor made some slight changes, and in the column on the statement provided for the purpose, set down his figures showing his total valuation for tax purposes as $26,955.

The county assessor duly returned the assessment roll to the county clerk. There was no change on the assessment roll of the assessor's valuation when the roll came into the hands of the county clerk. The board of equalization made no change in the valuation, and neither approved nor adopted any change made by anybody else. The county clerk made no change, and carried the valuation shown by the assessment roll, $26,955, to the tax roll.

On October 15, 1929, the county clerk changed the tax roll. He added to the valuation of plaintiff's property the sum of $23,045, erased the figures showing total valuation, and wrote over the erasure in ink as the total valuation the figures $50,000. On the tax roll the county clerk made the following notation:

"Total valuation. ($23,045 added valuation Oct. 15, 1929, by Co. Clerk.) $50,000."

The change made in the tax roll was made by the county clerk on notification by the county assessor that the county assessor had made the change in the valuation.

On October 3 the county assessor wrote plaintiff the following letter:

"You are hereby notified that your assessment for 1929 is raised from $26,955 to $50,000.

"The report of the secretary of state shows that your company has a capital stock of $50,000 paid up.

"Therefore I assess the remainder of the stock, $23,045, and your plant,

meters, office fixtures, and merchandise, $26,955, which makes a total of $50,000."

It will be observed this letter told what the assessor was then doing, not something which he remembered as having been done some time in the past. The language is, "Your assessment for 1929 is raised. . . . I assess the remainder of the stock . . ." As indicated, on October 15 the county clerk made the change on the tax roll. He testified the change would be made as of the date the assessor notified him, or before the tax rolls were turned over to the county treasurer, which meant on notification or subsequently before delivery of the tax rolls to the county treasurer.

On December 24 the assessor wrote plaintiff another letter, which reads:

"Mr. Chas. C. Everitt, the county treasurer, has referred us to your letter to him of the 20th, asking about the raise of the Girard Gas Co. in the assessed valuation.

"This raise was made because the records of the secretary of state office show a capital stock of $50,000.

"As soon as the assessment was raised I notified your company of the raise."

The result is, the letter of October 3 was written as soon as the raise was made, and if the assessor was honest in giving plaintiff notice of raise in its assessment as soon as the raise was made, the change in the assessment was made on or shortly before October 3.

To change the valuation on the assessment roll it was necessary to make some erasures, and the assessor testified he made the erasures.

The careful attorney for plaintiff had a conversation with the assessor with respect to the date the valuation was increased. The following occurred at the trial.

"Q. And you told me in your office, did you not, down here in this building, that you changed those figures and added $23,045 to the assessment, so as to make the assessment $50,000, on October 3? A. If I told you that, that must be a mistake, if I told you that.

"Q. You don't say you didn't tell me that? A. I don't say as I did. I think I am talking about the October 3 when I mean that that was when I sent them the notification of their raise. That was in my hands. The assessment was changed away back in June or July. I couldn't tell you what time in July. The girl that put these on here worked the first eleven days in July. She made the change off of that copy, she made that change in here off of that copy on account that copy was made, the change was made. I didn't tell you that I made the change in October."

The girl referred to was Mrs. Jackson, called "Lola Jacks," and

another girl who worked in the assessor's office testified the figures were those of Lola Jacks.

If credible, the oral testimony, utterly incompatible with the assessor's written statements voluntarily made before litigation was thought of, merely threw date of the increased valuation into the air. It seems the district court accepted the peculiar oral testimony, and stated the following finding of fact:

"2. That after said statements for assessment were returned to said county assessor by said Girard Gas Company, and some time in the month of June or the first eleven days of the month of July, 1929, the county assessor increased the value of the amount returned by the Girard Gas Company from $26,956 to $50,000."

The finding of the district court was of no benefit to defendants, and the increase in the valuation was made without authority, and was void.

The assessor may change a valuation which he is satisfied is too low, but the statute expressly provides the change shall be made at the time the taxpayer's return is made to the assessor. (R. S. 79-312.) When the assessment roll on which the assessor has extended his own valuation, as in this case, has been delivered to the county clerk, the county assessor's power to raise or lower valuation has ceased. He may add omitted property, correct errors, and correct footings, so the rolls may be delivered to the county clerk "in perfect condition for use of the county board of equalization" (R. S. 79-1412); but after delivery of the assessment roll to the county clerk the assessor is through, so far as valuation of property which he has valued on the assessment roll is concerned. Only the board of equalization or the county clerk may then increase valuation.

The board of equalization has authority to increase the assessor's valuation. The board of equalization must adjourn *sine die* on or before June 20. It would be rather peculiar if the assessor had authority to intrude and change his assessment roll while the board is in session with power and for the purpose of increasing valuation if an increase be proper. The court's finding does not state whether the assessor's change was made before or after June 20, but as indicated, whenever the change was made, it was not approved or adopted by the board of equalization, and the board of equalization took no independent action in the matter.

The county clerk may change valuation, but the valuation made and returned by the assessor may not be increased, either by the

board of equalization or by the county clerk, without a five-day notice to the taxpayer, and without a hearing at which the taxpayer may have opportunity to show his return was correct. The notice is jurisdictional (*Dykes v. Mortgage Co.,* 57 Kan. 416, 46 Pac. 711), and a record must be made in the county clerk's office of the facts or evidence on which the increase is made. (R. S. 79-1432.)

Adherence to the prescribed procedure relating to increase in valuation of a taxpayer's property is indispensable to protect the taxpayer from arbitrary conduct of taxing officers. Years ago, in a certain county in this state, if a taxpayer did not perform in politics in a manner satisfactory to "the courthouse ring," his taxes were increased.

As indicated, the assessor's authority to increase the taxpayer's valuation is restricted to the time the taxpayer makes his return. According to the court's finding, the taxpayer's valuation was increased in June or July by the assessor, who had no authority to make the increase, or to give notice of increase. Therefore, the assessor's letter of October 3 was waste paper. The county clerk gave no notice at all of the increased valuation he placed on the tax roll pursuant to the assessor's action.

The assessor did not fail to complete or return his valuation within the time required by law; there was no informality or irregularity in making the valuation; and there were no errors or omissions to be corrected by the assessor before he filed the assessment roll with the county clerk. What the assessor did was to increase his valuation of property duly returned for taxation, and R. S. 79-412, cited by defendants, has no application. R. S. 79-2503 relates to conveyance of land sold for taxes, and that section and the decision in *Challiss v. Rigg,* 49 Kan. 119, 30 Pac. 190, cited by defendants, have no application. The result is, the increase in the valuation of plaintiff's property is not sustainable on any theory.

A claim for refund of illegal taxes is founded on implied contract, the three-year statute of limitation governs, and the claim for refund of the illegal portion of the taxes paid by plaintiff was seasonably presented to the district court.

The judgment of the district court is reversed, and the cause is remanded with direction to render judgment for plaintiff.