Nos. 33,711 and 34,090

THE ATCHISON & EASTERN BRIDGE COMPANY, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ATCHISON; CLAUD MEYER, County Treasurer; THE CITY OF ATCHISON, and THE BOARD OF EDUCATION OF THE CITY OF ATCHISON, *Appellees*.

(91 P. 2d 84)

Opinion filed June 10, 1939.

*T. A. Moxcey*, of Atchison, and *W. F. Guthrie*, of Kansas City, Mo., for the appellant.

*Ralph U. Pfouts*, county attorney, *Maurice P. O'Keefe*, city attorney, and *Ralph M. Hope*, attorney for board of education, for the appellees.

The opinion of the court was delivered by

ALLEN, J.: Two actions were brought by appellant to recover taxes paid for years 1934 and 1935 upon its toll bridge across the Missouri river at Atchison. In case No. 33,711 the action was to recover taxes which had been paid without protest, and the appeal is from a judgment sustaining a demurrer to the petition. In case No. 34,090 the action was to recover taxes paid under protest. This case was tried to the court, and the appeal is from judgment sustaining a demurrer to the evidence.

We first examine the latter case—No. 34,090. The taxes paid were assessed under our statute G. S. 1935, 79-322, which provides:

"That all persons, companies or corporations owning, controlling or operating any highway or railroad bridge over any stream or river forming the boundary line between this and any other state shall be required to list the same for taxation, and the same shall be assessed and taxed at its true value in money, as personal property; and in arriving at such value, if such bridge is constructed over a navigable stream, the value of the same to the center of the channel of such stream, together with all rights, privileges and franchises connected therewith or belonging thereto, shall be taken into consideration in ascertaining the true value of such bridge property for taxation; and it shall be the duty of the president, vice-president or superintendent of such bridge to make return to the proper assessor; giving the dimensions of said bridge in the county where it is located and its earning capacity, together with a full statement of all of its rights, privileges, and franchises, and the same shall be returned by the assessor, as by law in such cases made and provided."

As stated, the bridge upon which the taxes were paid is across the Missouri river east of the city of Atchison, and at a point where the river runs in a southerly direction. The charter of the city of Atchison (Private Laws of the Territory of Kansas, 1858, ch. 77) established the eastern boundary of the city as "the middle of the main channel" of the Missouri river. By ordinance No. 866, passed in March, 1888, the eastern boundary of the city was described as being along the west bank of the river. The ordinance did not purport to detach any land from the eastern part of the city, although it did take some additional territory into another part of the city. Subsequent ordinances restated the boundaries as in ordinance No. 866.

Appellant contends that the restatement of the boundaries in ordinance No. 866, and in the subsequent ordinances, detached that portion of the territory between the west bank and the middle of the main channel of the river; that the segment of appellant's bridge across such strip of territory was not in the city of Atchison, and,

therefore, the assessment and levy of the tax on such segment or portion of the bridge was void.

The question presented—and perhaps the vital question in this case—is whether ordinance No. 866, passed in 1888, was valid and operated to vacate and exclude the territory between the west bank and the middle of the main channel from the boundaries of the city. The following stipulation appears in the record:

"And further: 'that in 1858, chapter 77, Laws of the Territory of Kansas, granted a charter to the city of Atchison, which charter was duly adopted by said city at a special election held March 2, 1858, and by ordinance of the city of Atchison compiled and revised in 1860, the eastern boundary of said city was fixed as the middle of the main channel of the Missouri river. Several ordinances of the city of Atchison were passed and took effect purporting to change the eastern boundary of said city and to exclude territory which had been granted by charter and adopted by ordinance as aforesaid, but in no instance did the city of Atchison or its officers or agents file a petition in the office of the county clerk of Atchison county, Kansas, or directed to the board of county commissioners of Atchison county, Kansas, praying for a vacation or exclusion of territory as far as the eastern boundary of said city is concerned, nor was there any hearing before the board of county commissioners ever had to exclude or change the eastern boundary of the city of Atchison from the middle of the main channel of the Missouri river and at all times referred to in this paragraph of this stipulation the city of Atchison, Kansas, has been located in Atchison county, Kansas.'"

The general legislative scheme for the enlargement of city boundaries and for the vacation and exclusion of territory therefrom is found in G. S. 1935, chapter 12, article 5. When the city boundaries are to be enlarged, G. S. 1935, 12-501, provides the governing body of the city shall in the name of the city present a petition to the board of county commissioners, and the following sections provide the procedure to be followed.

Where land included within the city boundaries is to be vacated and excluded therefrom, the procedure is set forth in section 12-504 and the succeeding sections. Section 12-504 provides that whenever the owner or owners of any townsite or part of a townsite, or of any addition or part of an addition to any city shall desire to have the same vacated or shall desire to exclude any tracts from the boundaries of the city wherein situated, public notice shall be given that a petition has been filed in the office of the county clerk of the county, directed to the county commissioners of the county "praying for such vacation or exclusion," and stating the time for hearing before the board. The section provides that "the provisions of this

act" shall not apply to any incorporated city unless the governing body thereof shall recommend that such petition be granted.

The evolution of this statute discloses a consistent legislative plan for the vacation and exclusion of property from the boundaries of towns and cities—the petition or application must be to the county board, public notice must be given containing a description of the street, alley or property to be vacated or excluded, stating the time of the hearing by the board, and that the board shall make such order. It was so provided in the original statute, Compiled Laws of 1862, chapter 108, section 1.

G. S. 1868, chapter 108, section 1, page 1071, provided that for the vacation of any public grounds, street or alley, the application was to be made to the county board for the order of vacation.

The Laws of 1877, chapter 190, section 1, contained a similar provision.

The Laws of 1891, chapter 245, section 1, amended prior acts, but provided for a hearing before the board of county commissioners.

Under the Laws of 1897, chapter 267, section 1, provided that the application should be made to the district court.

The Laws of 1905, chapter 519, section 1, is similar to G. S. 1935, 12-504, and provided that the petition for the vacation or exclusion of any tract must be presented to the board of county commissioners.

Notwithstanding the legislative policy shown by an unbroken chain of statutes since 1862 denying to the governing body of a city the authority to exclude any territory from the city boundaries, appellant confidently asserts that the city of Atchison had the power to enact ordinance No. 866 in the year 1888. In support of this view appellant relies upon G. S. 1868, chapter 18, article 2, section 34, which provided:

"The city council, in their discretion, may add from the territory adjacent to the city limits, as defined and existing at the date of the approval of this act, such other wards as they may deem proper; and shall, in every case, have power to increase or diminish the city limits in such manner as in their judgment and discretion may be to the benefit of the city: *Provided,* That the number of wards shall not be less than four; but in no case shall they have power to increase the city limits without first obtaining the assent of a majority of all the legal voters, residents of the territory proposed to be added to the city limits."

Appellees assert that this section was repealed by Laws of 1874, chapter 46, which contained a revision of the laws on this subject. As our attention has not been called to an appearance of this "in--

crease or diminish" provision subsequent to 1874, the contention of appellees would appear to be well founded, and therefore there was no statute in force in 1888 to support ordinance No. 866 upon which appellant relies. However, it is worthy of note that at the same session of the legislature at which the section relied upon by appellant was passed two other statutes were passed specifically dealing with the vacation of land and diminishing the boundaries of cities and providing specific procedure therefor.

Thus G. S. 1868, chapter 108, section 1, page 1071, provided that any person seeking to have any street, alley or public grounds vacated should, after due notice, make application "to the county board for the order of vacation." Also, G. S. 1868, chapter 109, article 3, sections 23 and 24, made provision for the vacation of lands laid out and platted into towns, cities or villages. The procedure for such vacation and exclusion required "written petition of any one or more persons, who, by their affidavit, represent that they are the owners of a majority of the lots," notice by publication of the time of the hearing before the county board, with opportunity for protest, etc.

These statutes, being *in pari materia*, are to be construed together. In the case of Shortall v. Huppe, 99 Kan. 639, 162 Pac. 319, it was said:

"In the case of *In re Hall, Petitioner,* 38 Kan. 670, 17 Pac. 649, this court said:

" 'Laws enacted by the same legislature about the same time and concerning the same subject matter, being *in pari materia,* are to be taken and considered together in order to determine the legislative purpose and arrive at the true result.' (Syl. ¶ 1.)

"(See, also, *State v. Young,* 17 Kan. 414; *Telegraph Co. v. Austin,* 67 Kan. 208, 212, 72 Pac. 850; *State v. Pauley,* 83 Kan. 456, 461, 112 Pac. 141; *Hibbard v. Barker,* 84 Kan. 848, 851, 115 Pac. 561; *Railway Co. v. Railway Commissioners,* 85 Kan. 229, 233, 116 Pac. 896; and 36 Cyc. 1086, 1151.)" (p. 642.)

See, also, *In re Estate of Edgington,* 144 Kan. 478, 480, 61 P. 2d 873; *Voran v. Wright,* 129 Kan. 1, 281 Pac. 938, 129 Kan. 601, 284 Pac. 807.

From the statutes outlined above we have an undeviating course of legislation from 1862—three quarters of a century—denying to cities the authority to diminish their boundaries and exclude territory therefrom by the mere passage of an ordinance. The legislature has seen fit to vest that authority in the board of county commissioners. It is clear the statute of 1868, relied upon by appellant,

did not authorize the city to change the boundaries by ordinance No. 866 or the subsequent ordinances.

Appellant directs our attention to G. S. 1935, 13-201, as having some bearing on this question. That section reads:

"The corporate limits of any city shall remain as they now are, and until changed by ordinance, as herein provided. Such limits shall be declared by ordinance, and upon any change being made therein the entire boundary as changed shall be declared in one ordinance."

Appellant contends that section 13-201 is simply a curative statute. It claims that the reënactment or amendment of that statute at various times since 1868 was for the purpose of curing legal defects that might have arisen in various city boundaries over the state since the prior enactment of the same statute.

This statute was first enacted in 1868, and first appeared in General Statutes of 1868 as chapter 18, article 1, section 3, as follows:

"The corporate limits of any city heretofore incorporated, and subject to the provisions of this act, shall remain as heretofore until changed by authority of law."

In 1874 the statute was reënacted in exactly the same language along with many other statutes originally appearing in G. S. 1868, chapter 18. See Laws of 1874, chapter 46, section 3.

In 1881 the statute was amended and appears in Laws of 1881, chapter 37, section 7, as follows:

"The corporate limits of any city of the first class shall remain as heretofore, until changed as provided by law. Such limit shall be declared by ordinance, and upon any change being made therein, the entire boundary as changed shall be declared in one ordinance."

In 1903 the statute was amended slightly and reënacted (Laws 1903, ch. 122, sec. 8) in the same language in which it now appears.

This statute was again reënacted without change in 1907. (See Laws of 1907, ch. 114, sec. 7.)

When the eastern boundary of the city was first described as at the west bank of the river, in 1888, by ordinance No. 866, the 1881 law set forth above was in effect. Under appellant's theory that law operated as a "statute of repose" as to all city limits in effect at that time, and if a change were made later, although invalid, the next enactment of the statute in 1903 adopted that change and all question of the legality of the alleged change was set at rest.

We do not so construe the statute. When the boundaries of a city are enlarged by taking in adjacent territory, or where the

boundaries are contracted by the vacation or the exclusion of land from the city, such addition or exclusion necessarily effects a change in the city limits. When such change is made it becomes the duty of the governing body of the city to declare by ordinance the entire boundary of the city. (*Horner v. City of Atchison,* 93 Kan. 557, 558, 144 Pac. 1010.) The theory of appellant that G. S. 1935, 13-201, validated ordinance No. 866 and subsequent ordinances purporting to change the eastern boundary of the city from the center of the main channel of the river as fixed by the charter in 1858, to the west bank of the river, cannot be sustained.

Nor are we able to agree to the further contention of appellant that the decision in *State, ex rel., v. City of Atchison,* 92 Kan. 431, 140 Pac. 873, is *res judicata* as to the question involved in the present action. The action was brought in the name of the state of Kansas, on relation of the attorney general, to oust the city of Atchison from exercising certain powers it had assumed to exercise in the passage of ordinance No. 3096, purporting to annex 65 acres of land to the city. It appears that the ordinance was based on section 872, G. S. 1909, now G. S. 1935, 13-202. It was held the city had not exceeded its corporate power; that the ordinance incorporating the 65-acre tract was valid. The boundary line involved in that action is not the eastern boundary line involved in the present action. As stated above, ordinance No. 3096, effective August 11, 1913, purported to incorporate the 65-acre tract into the city under section 872, G. S. 1909, now G. S. 1935, 13-202. The validity of the ordinance for the purpose of the admission of the 65-acre tract was the question at issue. It was held to be valid for that purpose.

There was not, however, any issue before the court as to the exclusion of a strip of territory between the middle of the channel and the west bank of the Missouri river. That question was not before the court. If ordinance No. 3096 not only described the 65-acre tract to be admitted, but also traced the general corporate limits of the city as provided for by G. S. 1935, 13-201, and the line so drawn would exclude territory from another part of the city, obviously the decision would be *res judicata* only as to questions before the court. It determined the validity of annexation of the 65-acre addition; it did not determine the validity of the exclusion of the strip of land on the eastern boundary of the city.

Furthermore, to make a former judgment a bar to the maintenance of a subsequent action certain conditions must exist. Thus in *Rea v. Telephone Co.,* 88 Kan. 82, 127 Pac. 603, the rule was stated:

"An issue is *res judicata* only when the following conditions exist: identity in the things sued for, identity of the cause of action, identity of persons and parties to the action, and identity in the quality of the persons for or against whom the claim is made."

See, also, *Henry v. Railway Co.*, 98 Kan. 567, 158 Pac. 857; *Hayes v. Insurance Co.*, 104 Kan. 230, 178 Pac. 432.

Neither the plaintiff here, nor any defendant save the city of Atchison, was a party to such former suit. There being neither identity of parties nor in the subject matter sued for, clearly the doctrine of *res judicata* cannot be invoked.

Appellant also invoked the doctrine that the rule of *res judicata* applies as well to things which could have been decided as it does to things actually decided, and asserts that this rule applied to the decision in *State, ex. rel., v. City of Atchison,* supra, determines the eastern boundary of the city as being along the west bank of the river. The rule, however, has well-established limits. In *Stroup v. Pepper*, 69 Kan. 241, 76 Pac. 825, the rule was thus stated:

"The rule that a judgment in bar, or as evidence in estoppel, is binding not only as to every question actually presented and considered and on which the court rested its decision, but also as to every question that might have been presented and decided, does not apply to a different cause of action between the same parties, except as to questions shown to have been actually decided in the former action." (Syl. ¶ 1.)

See, also, *Brush v. Rich*, 83 Kan. 531, 112 Pac. 158; *Paris v. Golden*, 96 Kan. 668, 153 Pac. 528; *Probst v. Weigand*, 133 Kan. 232, 299 Pac. 611; *Campbell v. McDonald*, 136 Kan. 280, 15 P. 2d 462; *Cromwell v. County of Sac*, 94 U. S. 351, 24 L. Ed. 195; 2 Freeman on Judgments, § 676.

As the cause of action is not the same as in the former case, and not between the same parties, the rule of *res judicata* under the doctrine invoked does not apply.

We are next to consider the validity of the action of the county assessor in raising the assessed valuation of the bridge from $330,000, as declared by appellant, to $500,000. Appellant contends that the action of the county assessor in raising the valuation "was without jurisdiction or authority and utterly void." As shown by the evidence, the assessment was made in the following manner: The deputy county assessor left the proper blank with the superintendent of the bridge company; several days later he returned and got the blank in which the part of the bridge in Kansas had been returned under the column "valuation by owner" as $330,000; after the return had

been attested the deputy penciled in the same figure. At that time it seems that appellant's superintendent remarked something to the effect that he supposed the valuation would be raised to $500,000, as it always had been. The deputy then took the return of the appellant to the county assessor's office and gave it to the county assessor and at that time mentioned the above statement made by the bridge superintendent. The county assessor immediately ordered another deputy in the office to change the valuation to $500,000, and the change was then made. The county assessor testified he told the deputy bringing the return to notify the bridge superintendent that the valuation had been raised to $500,000; that he thought he mailed a notice to that effect; and a notice of the meeting of the county board of equalization giving the valuation of the property at $500,000 was introduced in evidence after having been produced from the bridge company's files. The bridge superintendent testified he had notified the home office of the change in valuation.

The statute under which the assessor acted is G. S. 1935, 79-312, which provides:

"It shall be the duty of the assessor, and he is empowered and authorized, to increase or diminish the value of any or all items of personal property as listed by any person, company or corporation, if he is satisfied that said property has been returned below or above its true value in money; but said change in value shall be made at the time the return is made to the assessor."

The plaintiff contends that the above statute refers only to the deputy assessor. We find nothing in the above statute to lead to such a construction. In the case of *Girard Gas Co. v. Crawford County Comm'rs*, 139 Kan. 452, 32 P. 2d 226, the above statute was construed. It was there held that the assessor could not increase the valuation of a taxpayer's property after he turned the tax rolls over to the county clerk and the tax rolls had thus passed out of his hands. There was nothing of that kind done in the case now under consideration. In the Girard Gas Company case it was said:

"The assessor may change a valuation which he is satisfied is too low, but the statute expressly provides the change shall be made at the time the tax-payer's return is made to the assessor. (R. S. 79-312.)" (p. 455.)

In this case the change in valuation was made when the tax-payer's return first came to the office of the assessor and the tax-payer was notified at once. The requirements of the statute were followed.

Plaintiff next contends the assessment was raised due to the arbi-

trary and capricious action of the county assessor. No facts were either pleaded or produced in evidence to sustain such a contention.

The assessor testified that he valued the whole bridge property at one million dollars, and took half of that amount as the value of the property in Kansas. Furthermore, he testified, and the record shows the fact to be, that the property had been valued at $500,000 for taxes in Kansas for approximately twenty years. It seems that the company had never made any complaint about the valuation. If the company thought the valuation for 1935 or for the preceding years was too high it could have brought the matter to the attention of the county board of equalization and the state tax commission in the manner provided by law. Plaintiff cannot complain that the valuation was not for a proper amount in this case. That was a matter for the assessing officers. (*Eureka B. & L. Ass'n v. Myers,* 147 Kan. 609, 78 P. 2d. 67.) In the absence of evidence to the contrary it will be presumed that these officers acted in good faith.

We find no error in the judgment of the trial court in sustaining a demurrer to the evidence in case No. 34,090.

In case No. 33,711 the action was to recover taxes paid without protest. The claim is made that the taxes were paid under a mutual mistake of fact, the mutual mistake being that the eastern boundary line of the city was the middle of the channel of the Missouri river. The action is predicated on the theory that the eastern boundary line of the city was the west bank of the river. We have found otherwise. Assuming that taxes paid without protest could be recovered, if paid under mutual mistake, the action must fail, as we have found that the portion of the bridge upon which the taxes were assessed is within the city limits. As this conclusion determines the action, it is unnecessary to discuss other questions raised by appellant.

In case No. 34,090 the judgment of the trial court in sustaining the demurrer to the evidence is affirmed. In case No. 33,711 the judgment of the trial court in sustaining a demurrer to the petition is affirmed.