No. 18,994.

W. R. BENN, *Appellant*, v. E. W. SLAYMAKER, as Sheriff, etc., et al., *Appellees.*

SYLLABUS BY THE COURT.

1. TAXATION — *Partnership Property — Excessive Valuation — Application to Reduce Valuation Too Late.* On April 12, 1912, the managing partner of a firm returned its personal property for taxation. No steps were taken to correct the valuation which he placed on the property until April 22, 1913, when the passive partner filed a petition with the tax commission to reduce the valuation, alleging that the valuation was excessive and was made so with intent on the part of the managing partner to defraud him. The tax commission ruled that it had no authority to grant the desired relief. *Held*, the ruling was correct.

2. SAME — *Excessive Assessment Not Deemed Fraudulent — Court of Equity No Jurisdiction to Correct When Statutory Tribunal Provided.* The decision in the case of *Finney County v. Bullard*, 77 Kan. 349, 94 Pac. 129, that an assessment is not deemed fraudulent merely because it is excessive, and that a court of equity has no jurisdiction under its general power to correct an unequal or unjust assessment when a statutory board has been provided for that purpose, approved and followed.

Appeal from Harvey district court; FRANK F. PRIGG, judge. Opinion filed October 10, 1914. Affirmed.

*Clarence Spooner*, of Newton, for the appellant.

*John S. Dawson*, attorney-general, and *Harry W. Hart*, county attorney, for the appellees; *Ezra Branine*, of Newton, of counsel.

The opinion of the court was delivered by

BURCH, J.: The action in the district court was one to enjoin the execution of a warrant for the collection of taxes on personal property. A demurrer was sustained to the petition and the plaintiff appeals.

The plaintiff and A. W. Johnson were partners con-

ducting a retail furniture store under the firm name
of the Home Furniture Company. The plaintiff was
employed in the railway mail service and took no part
in conducting the business. Johnson was sole man-
ager, and as such, on April 12, 1912, made a statement
to the deputy assessor of the firm's property and its
value for purposes of taxation. It is charged that the
return was falsified by overstating the amount of prop-
erty and its taxable value. This was done to enable
Johnson to secure larger credit, and by means of such
credit to manipulate the business in such a way as to
defraud the plaintiff. The result was that taxes
were assessed against the partnership in the sum of
approximately $225 when the rightful sum should have
been approximately $75. The plaintiff did not discover
what had been done until after the county board of
equalization had adjourned, and he took no steps to
have the valuation corrected until April 22, 1913, when
he presented a petition to the tax commission for that
purpose. On May 9, 1913, the tax commission ruled
that it had no authority to rebate or reduce the taxes
charged against the furniture company by granting
the desired relief. On May 12, 1913, the plaintiff com-
menced the action in the district court, and as a part
of the relief prayed for asked that the court ascertain
the proper amount of taxes chargeable against the
furniture company. In the meantime the company's
assets passed into the hands of an assignee for the
benefit of creditors, and Johnson became insolvent.

The sixteenth subdivision of section 9347 of the Gen-
eral Statutes of 1909, defining the powers of the tax
commission, reads as follows:

"*Sixteenth,* To require any county board of equaliza-
tion, at any time after its adjournment, to reconvene
and to make such orders as the Tax Commission shall
determine are just and necessary, and to direct and
order such county boards of equalization to raise or
lower the valuation of the property, real or personal,
in any township or city, and to raise or lower the val-

uation of the property of any person, company, or corporation; and to order and direct any county board of equalization to raise or lower the valuation of any class or classes of property; and generally to do and perform any act or to make any order or direction to any county board of equalization or any local assessor as to the valuation of any property or any class of property in any township, city or county which, in the judgment of said Tax Commission, may seem just and necessary, to the end that all property shall be valued and assessed in the same manner and to the same extent as any and all other property, real or personal, required to be listed for taxation."

The plaintiff argues that the words, "at any time," have no limitation, that the declination of the tax commission to assume jurisdiction deprived him of the benefit of the commission's revisory power, and consequently that an appeal to a court of equity is justified.

The court is of the opinion that the tax commission's interpretation of its authority was correct.

The statute quoted is part of a legislative scheme to secure equality and uniformity in valuation and assessment, upon which the public revenues for the ensuing year may be computed and levied, and the power granted may be lawfully exercised until the work of valuation and assessment has been fully completed. Preliminary orders may be issued to local assessors, directions may be given in advance to county boards of equalization, and when their work has been performed it may be reviewed, corrected and changed by the tax commission, which constitutes a state board of equalization for the equalization of the valuation and assessment of property throughout the state. The tax commission is required to meet in this capacity at its office on the second Wednesday in July in each year and perform the work of equalization. (Gen. Stat. 1909, § 9352.) Immediately upon the completion of this work the tax commission is required to certify its action, under its official seal, to the several county clerks of the state. (§ 9353.) As soon as the tax commission re-.

ports its action as the state board of equalization to the county clerks of the various counties they compute the percentage of increase or decrease in valuation authorized by the board, and then, after all levies are in,. determine the sums to be levied on the amount of personal property in the name of each owner. These sums. are then extended on the tax roll, which must be delivered to the county treasurer by November 1, when the county treasurer is charged with the amount of taxes assessed on the roll. (§ 9390.) On or before November 15, each county clerk must transmit to the tax commission a statement showing the total amount of taxes levied for all purposes in his county. These statements are to be included in the tax commission's report to the governor and the legislature, for their information in considering the fiscal affairs of the state. (§ 9393.)

While the tax commission has broad discretion in the exercise of its rightful power and need not restrict itself absolutely within arbitrary time limits, it is perfectly manifest that it is to act within the bounds of the scheme of taxation which the legislature has devised. The provision of section 9347, which has been quoted, must be read with section 9352, relating to the work of the tax commission sitting as the state board of equalization, and when valuation and assessment, including equalization, have been completed and closed for a given year, taxes have been levied on the basis of such valuation, the taxing process has advanced to the stage of collection, and the valuation and assessment of property for the next year is in full progress, the commission is without authority to take up the subject of valuation anew whose readjustment would disturb and confuse the financial affairs of the various municipalities depending on the collection of taxes charged on the tax roll. To do so would not be to equalize values, but would be, as the commission held, to rebate or reduce taxes in individual cases—conduct not within the contemplation of the legislature.

No fraud or fault of any kind is charged against any taxing officer or board. Johnson was the proper person to make the tax statement. The plaintiff consigned that duty to the managing partner of the firm and is bound by his conduct under elementary principles of agency. Having held Johnson out as possessing authority, and having clothed him with authority, in the particular matter, the plaintiff can not shift responsibility for his acts upon other shoulders. After the statement was returned by the assessor, who was guilty of no wrong in accepting Johnson's sworn declaration, ample opportunities were afforded the plaintiff to correct it, but he did not embrace them. The entire taxing process having been free from misconduct, fraud or inequity on the part of any officer, the only ground for interference by a court of equity that can be asserted is that the valuation is too high. It is settled law that an assessment is not deemed fraudulent merely because it is excessive, and a court of equity has no jurisdiction under its general powers to correct an unequal or unjust assessment when a statutory board has been provided for that purpose.

"The courts are not charged with the powers and duties of assessors, and have no right to review the decisions of those officers as to the value of property. The legislature has placed the responsibility upon the assessors in the first instance, and in case an owner of property is dissatisfied with their assessments he may appeal to the board of equalization to review values and correct mistakes of judgment. When the statute prescribes a method for revising or correcting unequal assessments that remedy alone must be followed." (*Finney County v. Bullard*, 77 Kan. 349, 354, 94 Pac. 129.)

The wisdom of this rule is illustrated by this case in two ways. Johnson is insolvent, the business is in the hands of an assignee, and after so great a lapse of time there is no assurance that the firm's property could be fairly valued as it existed on March 1, 1912. This might have been done by the county board of

equalization in June, 1912, or by the state board of equalization in July, 1912. If the courts or the tax commission had power to interfere generally a year or more after valuation and assessment have been completed and taxes have been levied accordingly, there would be no certainty or stability to the public revenues provided for a given year.

Having slept on his rights, the plaintiff is remediless, and the judgment of the district court is affirmed.