No. 45,804

STATE OF KANSAS, *ex rel.*, KENT FRIZZELL, Attorney General, *Plaintiff*, v. RONALD F. DWYER, Director of Property Valuation, State of Kansas, *Defendant*.

(460 P. 2d 507)

Opinion filed November 8, 1969.

*Gary L. Rohrer,* assistant attorney general, argued the cause, and *Kent Frizzell,* attorney general, and *J. Richard Foth,* assistant attorney general, were with him on the brief for the plaintiff.

*Clarence J. Malone,* of Topeka, argued the cause, and *Daniel L. Swagerty,* of Topeka, was with him on the brief for the defendant.

*Warren W. Shaw* and *James C. Wright,* both of Topeka, were on the brief *amici curiae* for the Kansas County Commissioners Association and the Kansas Motor Car Dealers Association.

The opinion of the court was delivered by

HARMAN, C.: This original quo warranto action on the relation of the attorney general tests the validity of the provisions of Chapter 431, Laws of 1969, which provides a method whereby motor vehicles acquired after January 1 but before November 1 are to be listed and assessed for ad valorem taxation. Defendant is the officer charged with general supervision over the administration of the assessment and tax laws of the state (K. S. A. 79-1404).

Issues were joined, the case was briefed and orally argued and on September 23, 1969, judgment was entered for defendant, that decision being announced in a brief opinion found at *State, ex rel., v. Dwyer,* 204 Kan. 1, 458 P. 2d 735. The purpose of this opinion is to state reasons for the decision reached.

Generally, the challenged portion of the act provides that any motor vehicle acquired after January 1 and prior to November 1 of

any year is to be valued by the county assessor at the time of the vehicle's registration pursuant to schedules furnished by the director of property valuation and is to be placed on the tax rolls for the current year. Such valuation is to be prorated according to the number of months the vehicle is owned during the year. In case of a trade during the year the valuation and ensuing tax are to be apportioned between the vehicle previously owned by the taxpayer and that acquired as a replacement according to the number of months each was owned during the year. In making this valuation the county assessor is authorized to deviate from the valuation schedules by using a lower amount for a damaged vehicle.

Plaintiff has challenged the law upon several constitutional grounds. Our consideration and ultimate determination of validity is limited to those grounds.

Plaintiff first contends the law will deprive certain taxpayers of equal protection of the law and of their property without due process of law in violation of the federal constitution. His argument derives from our legislative pattern of appeals from action of assessing officials and briefly is this: Once property is listed and assessed, a taxpayer who feels aggrieved by the valuation of the assessor may complain to the board of county commissioners sitting as the county board of equalization which board is empowered to make such changes as it deems necessary in order to secure a proper assessment of all property. This board may now meet at any time after January 15 and is required to meet on the first business day in May for the purpose of such tax review. It generally remains in session during the month of May and for limited purposes meets in June but must finally adjourn for the year on June 15 and may not thereafter change an assessment (Chapter 437, Laws of 1969). Further appeal from this board's action may be made to the state board of equalization (K. S. A. 79-1409). Plaintiff then points out that the taxpayer who purchases a vehicle after June 15 may be dissatisfied with the assessment placed upon it but he may not present his grievance to the county board of equalization as can the purchaser of a vehicle earlier in the year and plaintiff argues the taxpayer is thus deprived of due process and equal protection of the law.

We cannot sustain this argument.

In *Felten Truck Line v. State Board of Tax Appeals*, 183 Kan. 287, 327 P. 2d 836, a statute placing a tax upon motor carriers was at-

tacked as violative of the fourteenth amendment to the federal constitution. In rejecting the contention this court stated:

"It is only necessary that at some stage of the assessment proceedings the taxpayer shall have an opportunity, after notice, to appear and contest the assessment." (p. 296.)

K. S. A. 79-1413a provides in pertinent part:

"Whenever, upon complaint made to the state board of tax appeals . . . by any property taxpayer, and a summary proceeding in that behalf had, it shall be made to appear to the satisfaction of said state board that the assessment of taxable . . . tangible personal property in any county is not in substantial compliance with law . . . said board of tax appeals shall order a reappraisal of all or any part of the taxable property. . . ."

Also, K. S. A. 79-2005 permits a taxpayer, who feels aggrieved, to pay his taxes under protest and thereafter either to commence a judicial proceeding to recover the protested payment or file an application with the state board of tax appeals for a hearing on the validity of his protest. This latter board is the same group which constitutes the state board of equalization (K. S. A. 79-1409).

These avenues of relief remain open to the aggrieved taxpayer after June 15. Their availability satisfies constitutional requirements. Although their relative simplicity and expensiveness in a given case might be debatable when compared to the further remedy open prior to June 15, this fact would not constitute a denial of equal protection of the law beyond constitutional limits.

Article 11, section 1, of our state constitution provides that, with certain exceptions not here material, the legislature shall provide for a uniform and equal rate of assessment and taxation. Plaintiff's principal contention is that this clause is violated in that some vehicles purchased after January 1 of any year are taxed for that year while no other property so purchased is taxed.

Our general statute on listing personal property subject to taxation provides that it shall be listed in the name of the owner as of January 1 (K. S. A. 1968 Supp. 79-301). It must be conceded the bulk of taxable personal property would be assessable under this provision, but not all, as we shall see.

Plaintiff relies primarily for his position on our early holding in *Graham v. Comm'rs of Chautauqua Co.*, 31 Kan. 473, 2 Pac. 549. There a taxpayer brought cattle from Indian Territory into Kansas in March and April of 1881 and kept them within this state until some time in October of that year. The general taxing date at that

time was March 1. The cattle were assessed by reason of a statute which provided that when any livestock shall be driven into any county of this state from beyond the boundaries of the state for the purpose of grazing therein at any time prior to the first day of December, such stock shall be liable to be assessed for all taxes levyable in that county for that year, the same as if the owner thereof resided and held the stock in such county on the first day of March of that year (Chap. 34, § 1, Laws of 1881). This court held the particular proviso unconstitutional, saying:

"All personal property in the state on the first of March is, with the constitutional exemptions, listed for taxation. This therefore enforces the constitutional rule of uniformity. There is no general provision for taxing property brought into the state after the first of March, but by this statute an attempt is made to tax certain kinds of property when brought into the state for certain purposes. But if this is done, the rate of assessment and taxation is not uniform and equal. It was said in the case of *Hines v. City of Leavenworth,* 3 Kas. 200, that 'the whole property of the state must be listed and valued for taxation.' If this be true, must not all the property brought into the state after the first of March be listed for taxation in order to support the listing of part? Certainly a statute cannot be sustained which attempts to cast the entire burden of taxation on one class of personal property, leaving all others exempt. If this be true in respect to the entire year, must it not be equally true in respect to a portion?

"We think this argument is sound, and that if in addition to the listing of all property present in the state on the first of March, an attempt is made to list property brought in after the first of March, it must apply to all property so brought in. No distinction can be made as to property after the first of March, any more than it can as to property on that day." (pp. 477-478.)

This ruling has since been cited approvingly by this court and the broad language quoted supports plaintiff's position. However, it should be noted the statute in the Graham case made no provision for pro rata assessment based upon length of time the property was in the state but called for a full year's assessment to be made against it. This fact alone makes the case distinguishable from the case at bar.

Since the time of the Graham case other statutes have been enacted which have the effect of taxing property not in the state at the time of the general listing date. Among these are K. S. A. 79-316 providing for the listing and assessment, under certain conditions, of personal property brought into the state after January 1 and prior to July 1; K. S. A. 79-316b and 79-316c providing for pro rata assessment of cattle which are in Kansas only a part of the year; K. S. A. 79-1001 and 79-1002 calling for assessment of merchants' property upon an average monthly inventory basis; K. S. A. 79-1003

providing for assessment of the property of merchants commencing business after January 1 and before November 1; and K. S. A. 79-1434 providing for assessment of property of transient merchants entering the state after January 1.

These statutes are cited merely as instances in which the legislature has sought to tax property acquired or brought into the state after January 1. We are aware their constitutionality has not been judicially challenged and, of course, cannot be determined here. The constitutionality of a 1937 act imposing a tax upon leased railroad freight cars operating within the state (now K. S. A. 79-907) was raised in *Associated Rly. Equipment Owners v. Wilson*, 167 Kan. 608, 208 P. 2d 604. The tax was to be measured by a percentage of gross earnings of the cars. Obviously, few of these cars were in the state on the regular listing date and, as pointed out in the opinion, the property was of such a nature that it was not amenable to the ordinary taxing processes and, absent a particular method as embodied in the act taxing it, could not be taxed at all. This court held the act did not violate article 11, section 1 of the constitution. So it is not correct to say that no other property acquired after January 1 is subject to taxation.

Our legislature's recent concern with our system of taxation was reflected by its creation in 1968 of a Joint Committee on State Tax Structure. This committee was charged with the duty of studying and providing recommendations to the legislature on various taxes imposed by the state and their relationship to each other and to the economy and public interest (Chap. 62, Laws of 1968). This committee held numerous hearings and in January, 1969, made its interim report to the legislature (Senate Journal, 1969 Regular Session, [January 30, 1969] p. 104). This report expressed concern over the fact much personal property has no recorded title so that administrative discovery of taxable items remains a problem and, further, that the consequence of escape from taxation of personal property is discrimination and over taxation of owners of real property. Special attention was paid to the subject of motor vehicles. The committee heard evidence of the possibility and practice of evasion of taxes thereon by means of transfer of title prior to January 1 either with transfer back or purchase of another vehicle after January 1. Conceivably one vehicle or a fleet of them could be brought into the state after January 1 by purchase or under rental or lease arrangement so as to be exempt from personal property taxes for that year,

although used in the state most of the year. The committee recommended passage of the legislation we deal with here, commenting that an existing "loophole" would be closed. Thus we see our legislature concluded that a serious tax evasion problem has existed in the past.

The dominant principle of our constitutional mandate is that property shall be assessed for taxation under uniform rules so that equality in the burden of taxation results. Yet practical problems in the administration of a taxing system always remain; absolute or perfect equality in taxation, being impossible of attainment, is not required. As long as there is substantial uniformity in the application of tax statutes, constitutional provisions relating to equality and uniformity are not violated (see 84 C. J. S., Taxation 22a & b; 1 Cooley, Taxation, § 259).

One element to be considered in determining subjection of various kinds of personal property to tax liability is the expense attendant to the listing and assessment procedure. Long ago, this factor was recognized in *Francis, Treas., v. A. T. & S. F. Rld. Co.*, 19 Kan. 303, when this court rejected a contention of lack of equality and uniformity in taxation in violation of article 11, section 1, in a situation where expense of the machinery for collection of certain taxes might well have exceeded the amount of taxes collected.

Some kind of inquisitorial process is generally required in the discovery of personal property to be listed for taxation. That this could be profitably carried on by the state beyond a certain listing date as to all kinds of personal property might well be doubted. Certainly the state is not obliged to tax property when the cost of discovery and assessment would be greater than the amount received. Our registration laws do provide a ready method for ascertainment of ownership of motor vehicles.

In considering the effect of Chapter 431, this question arises: If it was constitutional that, prior to its enactment, some property within the state during the year was taxable while other property within the state remained untaxed, how is it any less constitutional, after enactment of Chapter 431, that a lesser amount of property remains untaxed during the year? If anything, it would appear the latter situation results in greater uniformity and equality in the taxing structure. We think the legislature had tax reform in mind in enacting the legislation questioned here.

Plaintiff also urges the act lacks the requisite uniformity and

equality because vehicles purchased after November 1 would not be subject to taxation, while those purchased before that date are. That which has been heretofore said respecting the practical problems of taxation sufficiently answers this contention. A final cutoff date in our taxing system so as to give certainty and stability to the public revenues in a given year is an obvious necessity, which fact this court has recognized (*Benn v. Slaymaker*, 93 Kan. 64, 143 Pac. 503).

We cannot say the act results in invidious discrimination so as to destroy the requisite uniformity and equality in our taxing system, and its validity must be upheld.

Judgment is entered for defendant.

APPROVED BY THE COURT.

FROMME, J., dissenting: I cannot agree with the reasoning or the result reached in the foregoing opinion.

Equality and uniformity in taxation refer to an equality in the burden of taxation, so that no higher rate or greater levy in proportion to value is imposed on one species of property than on others similarly situated or of like character. Equality in taxation is accomplished when the burden of the tax falls equally and impartially on all the persons and property subject to it, so that no higher rate or greater levy in proportion to value is imposed upon a class of property. (84 C. J. S., Taxation, § 22 [b].) When motor vehicles are singled out by legislative act for repeated valuation and assessment each time they are purchased and sold, the resulting tax burden is neither equal nor uniform compared with other personal property, which is valued and assessed only once during a tax year. Discrimination and inequality result in such case, both within that special class treated and within the class of personal property generally.

The provisions of Chapter 431 of the 1969 Session Laws of Kansas violate the express provisions of the constitution of this state relating to equality and uniformity in taxation.

Article 11, section 1, of the Constitution of the State of Kansas states:

"The legislature shall provide for a uniform and equal rate of assessment and taxation, except that mineral products, money, mortgages, notes and other evidence of debt may be classified and taxed uniformly as to class as the legislature shall provide. All property used exclusively for state, county, munici-

pal, literary, educational, scientific, religious, benevolent and charitable purposes, and all household goods and personal effects not used for the production of income, shall be exempted from taxation."

Motor vehicles fall in that general category of property subject to taxation. The legislature is directed by the constitution to provide a uniform and equal rate of assessment and taxation for all such property. Every ad valorem tax must meet this constitutional requirement.

K. S. A. 1968 Supp. 79-301 provides for listing and assessment of personal property. It reads as follows:

"All tangible personal property subject to taxation shall be listed and assessed as of the first day of January each year in the name of the owner thereof. Such listing and assessment shall be made as hereinafter provided."

Chapter 431, 1969 Session Laws of Kansas, relates exclusively to the listing, valuation, assessment and taxation of motor vehicles. Subsection (b) provides generally for the listing of each vehicle when the owner files his annual application for registration. This listing leads to the assessment of all motor vehicles owned by a taxpayer as of January 1.

However, under Chapter 431 this may or may not be the only listing, valuation and assessment of a motor vehicle, for subsection (c) of the act provides that any motor vehicle acquired, purchased, traded or sold after January 1 and prior to November 1 of any year shall again be listed, valued, assessed and taxed to the new owner. The act provides in case of a subsequent sale the tentative value of the vehicle shall be the amount determined by the January 1 listing. This tentative value is then divided by twelve and that figure is multiplied by the number of months remaining in the calendar year. Thus the proportionate valuation on which a subsequent tax is levied is determined. This proportionate valuation then constitutes the value of the motor vehicle for said calendar year so far as the new owner is concerned. The motor vehicle is then assessed and taxed to the second owner. Each time the vehicle is sold and registered by a different owner it is again listed, valued, assessed and taxed. It is readily apparent that any motor vehicle transferred and not acquired as a replacement vehicle is subjected to an additional tax burden over and above the amount of tax levied and assessed on other types of personal property listed and assessed only once.

When a motor vehicle is traded for a replacement vehicle the act requires that the two vehicles be reassessed and each vehicle

is taxed to the owner on a pro rata basis for the number of months each is owned. The tax originally assessed on January 1 is thereby reduced and paid for those months it was owned.

However, no pro rata adjustment is provided in this act for cars sold outright during the calendar year. The owner on January 1 pays a full year assessment. The new purchaser is assessed for this same car. The mill levy remains the same but the valuation is reduced in proportion to the months remaining in the calendar year.

Let us consider a hypothetical case. A owns a car on January 1 which he sells outright to B on March 1. B sells the car to C on July 1. The tax assessed on the car January 1 amounts to $120. Since A did not replace the car his tax on the car is $120. When B buys the car on March 1 he is assessed for ten months or 10/12ths of $120. B's tax on the car is 100. When C buys the car on July 1 he is assessed for six months or 6/12ths of $120. C's tax on the car is $60. The tax burden on this car adds up to $280 in one year. If A had kept the car throughout the year the tax burden on this same car would have been $120.

This inherent inequality and lack of uniformity in taxation is present as between different motor vehicles having the same valuation. It is present when you compare the $280 tax with the tax assessed and paid on replacement vehicles and with tax assessed against other personal property with a comparable valuation. The valuations and the rate of levy are the same for each taxpayer but certain motor vehicles are subjected to repeated assessment which results in double taxation.

The Constitution of this state requires that the legislature provide uniform and equal rates of assessment and taxation of property and any law passed by the legislature which will result in double taxation is invalid. (*Hull v. Johnston,* 64 Kan. 170, 67 Pac. 548, *Lingenfelter v. Ferguson,* 71 Kan. 154, 80 Pac. 48.)

Uniformity in taxation implies equality in sharing the burden of taxation, and this equality cannot be attained without uniformity in the assessment as well as in the rate of taxation. (*Beardmore v. Ling,* 203 Kan. 802, Syl. ¶ 2, 457 P. 2d 117.)

The majority opinion of this court fails to address itself to the effects of the Act. No explanation is given to justify the discriminatory tax burden placed upon those motor vehicles which are subjected to repeated listing, valuation, assessment and taxation each time a vehicle is purchased and sold. The provision in our con-

stitution requiring a uniform and equal rate of assessment and taxation does not relate to the burden of tax on persons as the opinion of the court seems to infer. The constitutional requirement of uniformity and equality applies to the burden of tax placed upon property. (See *Addington v. Board of County Commissioners*, 191 Kan. 528, 382 P. 2d 315; *Voran v. Wright*, 129 Kan. 1, Syl. ¶ 5, 281 Pac. 938.)

It is the imposition of taxes upon selected classes of property to the exclusion of others, and the exemption of selected classes to the exclusion of others, which constitute invidious discriminations which destroy uniformity. (*Wheeler v. Weightman*, 96 Kan. 50, 58, 149 Pac. 977.)

The case of *Graham v. Comm'rs of Chautauqua Co.*, 31 Kan. 473, 2 Pac. 549 is analogous and fully supports the petitioner's claim in this case. In *Graham* a statute provided for the assessment of cattle driven into any county from any unorganized county or from another state prior to December 1. In holding a portion of the act unconstitutional the court said:

> "We think this argument is sound, and that if in addition to the listing of all property present in the state on the first of March, an attempt is made to list property brought in after the first of March, it must apply to all property so brought in. No distinction can be made as to property after the first of March, any more than it can as to property on that day. This case differs from that of *Francis v. Rld. Co.*, 19 Kas. 303, for in that the failure to reach all property was due to a lack of county organization and thus there was a failure of the tax machinery, while here it is the direct result of legislation distinguishing between different kinds of property." (p. 478)

The court's decision in that case is based squarely upon the inequality and lack of uniformity which attend when cattle driven into the state are taxed and other kinds of property brought into the state are not.

In our present case motor vehicles sold and acquired after the original assessment date, January 1, are taxed and other kinds of property sold and acquired after January 1 are not.

It is stated that the Graham case can be distinguished from our present case because in *Graham* the statute made no provision for pro rata assessment. After careful study of the Graham decision I do not believe the holding is based upon the absence of such a provision. In either event there is no distinction for Chapter 431, Laws of 1969, makes no provision for pro rata assessment of non-replacement motor vehicles.

No statute is cited, and I find none, which provides for assessment of other personal property *acquired* during the tax year. No statute is cited, and I find none, which provides generally for the assessment of personal property *brought into* this state after January 1. K. S. A. 79-314 which formerly provided for such assessments was repealed June 30, 1965.

Several statutes are cited in the majority opinion "merely as instances in which the legislature has sought to tax property acquired or brought into the state after January 1". However, those statutes apply only to limited types of personal property. They do not apply to the general body of personal property. The constitutionality of those laws has not been challenged or determined. They lend no support to the constitutionality of the present law.

K. S. A. 79-316 applies only to property brought into the state *when any person, association or corporation shall settle or organize in any county in this state or when any nonresident owner shall bring property into the state.*

K. S. A. 79-316b and 79-316c apply to livestock maintained both in Kansas and in another state which has reciprocal tax laws. These two statutes were enacted for the purpose of equalizing taxes on livestock in proportion to the number of months livestock is maintained in Kansas.

I fail to see how the constitutionality of Chapter 431, Laws of 1969, can be bolstered by reference to these special laws of limited application which have not been tested in court.

In support of the Act the case of *Associated Rly. Equipment Owners v. Wilson,* 167 Kan. 608, 208 P. 2d 604, is cited. In that case the court considered the constitutionality of what is now K. S. A. 79-907. This statute imposes a tax upon a percentage of the gross earnings from railroad freight cars leased to railroads and operated in Kansas and other states. Said tax is in lieu of all other taxes upon such property. As pointed out in the syllabus the decision is based upon a conviction that such property is taxable in no other manner, because the freight cars while in transit acquire no tax situs in the state. The case has very little relevance to the constitutional question here involved.

In support of the constitutionality of Chapter 431, Laws of 1969, reference has been made to the interim report of a Joint Committee on State Tax Structure made to the 1969 legislature, concerning a

"loophole" and a "serious tax evasion problem" with respect to taxing motor vehicles on January 1, the usual assessment date for property.

The so-called "loophole" or evasion of tax is alleged to occur when a prospective purchaser of a motor vehicle sells his old car to a dealer prior to January 1 and does not acquire title to another car until after the assessment date. I fail to see how such a sale to a dealer can be termed a "loophole". That term applies when no tax is assessed or collected. Such is not the case in the example given. In the example used the dealer owns both cars on January 1 and both cars are subject to assessment and taxation. (See K. S. A. 79-1001 and 79-1002.) The dealer pays the tax on both cars even though their value for tax purposes may be arrived at differently by the average monthly inventory method. This is not evading tax. It is shifting the tax burden onto the dealer. I notice the motor car dealers association appears herein as friend of the court in support of the new law.

If the assessment date, January 1, opens a "loophole" as to motor vehicles the same is equally true with respect to farm machinery, motor boats and other property. Under present tax laws a farmer may sell his tractor to the dealer before January 1 and purchase a new tractor after January 1. The dealer owns both tractors on January 1. The farmer owns none. The farmer owes no tax on either tractor for the current year.

If the problem is serious as to motor vehicles why is it any less serious as to other personal property? No reason exists as to motor vehicles which does not exist as to other property. This special classification and taxation of motor vehicles cannot be justified.

Various arguments are urged in support of this act. None of them are sound. It is suggested, if the expense necessary to collect the tax on certain property in a class is excessive, uniformity and equality is not required. This argument is false because the certain property referred to in this case is all property other than motor vehicles. The case of *Francis, Treas., v. A. T. & S. F. Rld. Co.,* 19 Kan. 303 is cited to support the argument. That early case arose in 1876 when some of the territory in the state was outside of any organized county. A law was passed taxing railroad property throughout the state. In the unorganized territory no other state taxes were imposed on personal property. There was no county organization and no officers to assess and collect tax on other

property. The decision holding the tax on railroad property valid rests upon the exigencies of that particular period. The reasoning in the case is open to more serious question now than in 1876. On page 316 of the reported decision the court said:

". . . The conclusions which we have reached are by no means entirely satisfactory to us. We hold the section to be constitutional and valid, not because it is clear to us that it is so, but because it is not clear to us that it is not." (19 Kan. 303, 316.)

The argument as to the difficulty in assessing and collecting tax in a similar manner on other personal property is fallacious because it completely overlooks our present laws governing the collection of sales and compensating tax. The machinery required to collect those taxes can readily be adapted and utilized to assess all other property when it is acquired.

Chapter 431, Laws of 1969, violates our constitutional requirement of equality and uniformity in the rate of assessment of personal property. Therefore, it should be held invalid.

SCHROEDER and O'CONNOR, JJ., join in the foregoing dissenting opinion.