No. 45,935

Mobil Oil Corporation, a Corporation, et al., *Appellees,* v. Sarah Etta Medcalf, Individually and as County Clerk of Stevens County, Kansas; Lucille Ashlock, Individually and as County Treasurer of Stevens County, Kansas; and Ronald F. Dwyer, Individually and as Director of Property Valuation of the State of Kansas, *Appellants.*

(483 P. 2d 1111)

Opinion filed April 10, 1971.

*Matthew J. Dowd,* assistant attorney general, argued the cause, and *Kent Frizzell,* attorney general, *G. L. Rohrer,* assistant attorney general, and *Richard F. Hayse,* assistant attorney general, were with him on the brief for the appellants.

*Richard Jones,* of Hershberger, Patterson, Jones & Thompson, Wichita, argued the cause, and *William H. Tabb,* of Dallas, Texas, and *J. C. B. Aler,* of Dallas, Texas, and *Robert W. Richards,* of Oklahoma City, Oklahoma, were with him on the brief for the appellees Mobil Oil Corporation, Northern Natural Gas Producing Company, and Mapco Production Company, and *Cecil C. Cammack, A. O. Holl, John D. Lovett,* and *Graydon D. Luthey,* all of Bartlesville, Oklahoma, were on the brief for the appellee Cities Service Oil Company, and *Ray H. Calihan, Jr.,* of Calihan, Green, Calihan & High, Garden City, was on the brief for the appellee Hugoton Production Company, and *C. C. Linley,* of Liberal, *Wendell J. Doggett,* of Houston, Texas, and *C. A. Conoley,* of Kansas City, Missouri, were on the brief for the appellee

Panhandle Eastern Pipe Line Company, and *Charles Vance,* of Liberal, and *Richard Jones,* of Wichita, were on the brief for the appellees.

The opinion of the court was delivered by

O'CONNOR, J.: This is an action to enjoin the defendants from enforcing and carrying out an order of the Director of Property Valuation of the state of Kansas relating to 1967 assessments for ad valorem tax purposes of. plaintiffs' gas-producing properties located in Stevens County. The district court granted a permanent injunction and defendants have perfected this appeal.

The question presented for our consideration is whether or not the director's order dated December 15, 1967, was timely issued within contemplation of the provisions of K. S. A. 79-1401 *et seq.,* and particularly K. S. A. 79-1404 (*Sixteenth*).

This case was previously before us (*Mobil Oil Corporation v. Reynolds,* 202 Kan. 179, 446 P. 2d 715) on appeal from an order of the district court dismissing the action. There we held the allegations of the petition were sufficient to raise a question of an illegal tax levy because the taxing authorities were allegedly proceeding contrary to statute and the trial court had jurisdiction to determine the issue under K. S. A. 60-907 (*a*). On remand of the case, the trial court heard evidence on the merits and sustained plaintiffs' motion for judgment on the basis the director's order was not timely made in that it ". . . upsets the whole scheme and orderly collection of taxes."

To focus the question with which we are confronted requires further amplification of the brief factual statement outlined in our earlier opinion.

Plaintiffs individually made due and timely 1967 ad valorem tax renditions to the acting County Assessor (County Clerk) of Stevens County covering their respective gas-producing properties. The renditions were examined and adjusted by the acting County Assessor in accordance with the gas schedule promulgated by the state Department of Property Valuation. Plaintiffs appealed the assessments thus made to the Board of County Commissioners of Stevens County, sitting as the County Board of Equalization. From the testimony disclosed in the record, it appears real estate in the county was assessed substantially lower than 30% of justifiable value (the state ratio study showed urban property assessed at 14%, and rural property assessed at 9% of justifiable value). Because of the

disparity, the members of the board ". . . felt that they could not in good conscience put gas properties on at 30%." Whereupon the County Board of Equalization, on May 8, 1967, ordered the assessment of oil and gas-producing properties (including those of plaintiffs) at 15% of justifiable value ". . . subject to approval of Property Valuation Department."

Prior to the order being made, Tim Hagaman, an employee of the acting County Assessor, contacted Ronald F. Dwyer, Director of Property Valuation, to ascertain if the contemplated order would meet with his approval. The testimony concerning Dwyer's attitude is somewhat conflicting. Dwyer's version of his conversation with Hagaman was that he could not approve the county board's action, although he could see some moral justification for it. Hagaman's impression, on the other hand, was that Dwyer indicated he had no authority to approve the order, ". . . but that it would be okay unless something came up, in which case he might have to do something." At any rate, after receiving this and other information from Hagaman, the County Board of Equalization "assumed" it had the approval of the property valuation department.

No appeal was taken from the order of the County Board of Equalization as authorized by K. S. A. 79-1409 (since amended).

The assessment sheets for oil and gas-producing properties in Stevens County were recomputed on the basis of the county board's order and delivered to the County Clerk, who in turn prepared an abstract of the assessment rolls of the county and forwarded it to the Director of Property Valuation June 22, 1967. (K. S. A. 79-1604.)

In the latter part of August, or first part of September 1967, at a meeting of county attorneys in Dwyer's office, one of the county attorneys told Dwyer that Stevens County officials had cut the state gas schedule in half with respect to the assessment of gas-producing properties. Thereupon, Dwyer called the Stevens County Clerk to learn more about the county board's action. During the month of September, Dwyer sent a field man to Stevens County to investigate the matter, and satisfied himself that his earlier information was correct. Nothing further was done by Dwyer until his order of December 15, 1967.

The law requires that all levies be prepared and certified to the County Clerk on or before August 25 of each year. (K. S. A. 79-1801 [since amended].) The County Clerk then proceeds to pre-

pare the tax roll by computing the sums to be levied upon all taxable real and personal property. The tax roll must be completed, certified, and delivered to the County Treasurer on or before November 1. (K. S. A. 79-1803.) All taxes are due on the first day of November of each year. (K. S. A. 79-1804.)

On October 19, 1967, the County Clerk of Stevens County transmitted to the Director of Property Valuation a statement of valuations and taxes levied for 1967 in compliance with K. S. A. 79-1806. The valuations of oil and gas properties shown on the statement were the same as those shown on the abstract of assessment rolls forwarded to the director June 22 and reflected on the tax roll certified to the County Treasurer before November first.

Under date of December 15, 1967, the Director of Property Valuation issued the following order which is the subject of this action:

TO:     Sarah Etta Medcalf
        The Duly Elected County Clerk
        Stevens County, Kansas

"You Are Hereby Ordered, pursuant to the authority granted the Director of Property Valuation under the Kansas Statutes (K. S. A. 79-1404, sixteenth), to recompute all gas producing property (both working interest and royalty interest) located in Stevens County, Kansas for 1967 using the state prescribed Gas Schedule.

"After said computation the difference in assessed value arrived at from that presently existing on the 1967 tax roll is to be assessed as a 1967 added tax.

"You Are Further Ordered to notify the Stevens County Treasurer of the amount of this added tax and direct her to impound this money so that it will be used to reduce the levies for the appropriate taxing districts in 1968."

After receiving the order on December 18, the County Clerk proceeded to recompute the tax roll as directed, and by the time this action was filed, March 5, 1968, the new statements were ready to be mailed.

The parties stipulated at trial that all the plaintiffs had paid at least the first half of their 1967 taxes as originally billed to them; that said payments were not paid under protest; and that ".  .  . probably most of that money had been spent."

Under the settled law of this jurisdiction, the assessment of property, when done in accordance with law, is an administrative function with which courts will not interfere nor substitute their judgment for the administrative authority. However, where state and local taxing officials do not perform their duties in accordance with

the law, the issue presented to the court is not the exercise of their administrative judgment, but the legality of their acts. The courts have no difficulty with their power and authority where taxing officials attempt to proceed without statutory authority or contrary to the statutes; such matters are rightly within the province of the judiciary. (*Garvey Grain, Inc. v. MacDonald,* 203 Kan. 1, 453 P. 2d 59; *Mobil Oil Corporation v. Reynolds,* supra; *Harshberger v. Board of County Commissioners,* 201 Kan. 592, 442 P. 2d 5; *Mobil Oil Corporation v. McHenry,* 200 Kan. 211, 436 P. 2d 982; *Board of County Commissioners v. Brookover,* 198 Kan. 70, 422 P. 2d 906; *Schulenberg v. City of Reading,* 196 Kan. 43, 410 P. 2d 324.)

Defendants (Appellants), in seeking to uphold the validity of the director's order, point to the broad powers conferred on him of general supervision and direction over County Assessors in the performance of their duties. (K. S. A. 79-1401.) More specifically, they call attention to provisions of K. S. A. 79-1404 (*Sixteenth*) (since amended) empowering the director:

"To require any county board of equalization, *at any time* after its adjournment, to reconvene and to make such orders as the director of property valuation shall determine are just and necessary, and to direct and order such county boards of equalization to raise or lower the valuation of the property, real or personal, in any township or city, and to raise or lower the valuation of the property of any person, company, or corporation; and to order and direct any county board of equalization to raise or lower the valuation of any class or classes of property; and *generally to do and perform any act or to make any order or direction to any county board of equalization or any local assessor as to the valuation of any property or any class of property in any township, city or county which, in the judgment of said director of property valuation, may seem just and necessary, to the end that all property shall be valued and assessed in the same manner and to the same extent as any and all other property, real or personal, required to be listed for taxation.*" [Emphasis added.]

Defendants emphasize the fact that the legislature did not impose any time limitations restricting the director's exercise of the power and authority granted him by the foregoing statutes.

Plaintiffs (appellees), on the other hand, take the stance that the director acted contrary to the statutes in that his order, if enforced, would unduly disrupt the tax procedure and time schedule established by the legislature in Chapter 79 of the Kansas Statutes Annotated, and, therefore, the district court correctly determined the matter. We are inclined to agree.

An attempt to interfere with the orderly scheme of taxation gave rise to the original mandamus action in *Mobil Oil Corporation v.*

*McHenry,* supra. There, a district court, on September 7, 1967, reduced the 1967 assessment valuations of all property in three counties except that owned by the plaintiffs, after successful appeals by the plaintiffs to the state Board of Tax Appeals equalizing the assessment of their gas properties with other property in each of the counties. In the opinion we carefully outlined the tax procedure and time schedule provided for in Chapter 79, with the admonition that the statutes require the work of taxation to be done speedily and to the end that the business of government may be carried on. We further observed that to have permitted interference with the procedure and schedule directed by the legislature in the manner attempted by the district court would have been to introduce chaos into the taxing process.

Although our decision in *McHenry* turned on the district court's lack of jurisdiction, we indirectly considered the timeliness of the mandamus action with respect to when the tax roll must be completed and certified to the County Treasurer. At page 238 of the opinion we stated:

"When the original petitions were filed in this court on October 13, 1967 (Grant and Stanton Counties), and October 16, 1967 (Morton County), it immediately became apparent that *time* for final action on the matter *was of the essence.* On or before the 1st day of November, 1967, the County Clerks of the respective counties were required to certify the taxes levied upon the real and personal property of their respective counties to the respective County Treasurers and charge the respective Treasurers with the amount of the respective taxes assessed on the tax roll (K. S. A. 79-1803). The taxes became due on the 1st day of November, 1967 (K. S. A. 79-1804). If proceedings to countermand the order of the district court in each of the private taxpayer actions in the three counties could be delayed beyond the 31st day of October, 1967, the plaintiffs in the private taxpayer actions would have won the first round in the battle to the detriment of the state government and the government of the three counties involved."

The importance which this court has attached to the orderly and timely execution of the legislative scheme of taxation was demonstrated early in our jurisprudence in *Benn v. Slaymaker,* 93 Kan. 64, 143 Pac. 503. In that case the assessment value of partnership property for the year 1912 was allegedly overstated, but the plaintiff partner did not discover what had been done until after the County Board of Equalization had adjourned. He took no steps to correct the valuation until April 22, 1913, when he presented a petition to the state tax commission for that purpose. The commission ruled it had no authority to rebate or reduce the

taxes. Thereafter, plaintiff filed an action in the district court to enjoin execution of a warrant for collection of the taxes. An order of the district court sustaining a demurrer to the petition was affirmed by this court.

Although the case is factually distinguishable, it involved the sixteenth subdivision of Section 9347 of the General Statutes of 1909 defining the powers of the tax commission. The text of the statute was identical with that of K. S. A. 79-1401 (*Sixteenth*) except for the words "tax commission" instead of "director of property valuation." In fact, the phrase "at any time" upon which the director now places great stress in arguing his order was timely issued, are the same words relied on by the plaintiff in *Slaymaker*. In rejecting plaintiff's argument, Mr. Justice Burch, speaking for the court, discussed the statute and its basic grant of authority in language we believe peculiarly applicable to the instant case.

"The statute quoted is part of a legislative scheme to secure equality and uniformity in valuation and assessment, upon which the public revenues for the ensuing year may be computed and levied, and the power granted may be lawfully exercised until the work of valuation and assessment has been fully completed. (p. 66.)

. . . . . . . . . . . . . .

"While the tax commission has broad discretion in the exercise of its rightful power and need not restrict itself absolutely within arbitrary time limits, it is perfectly manifest that it is to act within the bounds of the scheme of taxation which the legislature has devised. The provision of section 9347, which has been quoted, must be read with section 9352, relating to the work of the tax commission sitting as the state board of equalization, and when valuation and assessment, including equalization, have been completed and closed for a given year, taxes have been levied on the basis of such valuation, the taxing process has advanced to the stage of collection, and the valuation and assessment of property for the next year is in full progress, the commission is without authority to take up the subject of valuation anew whose readjustment would disturb and confuse the financial affairs of the various municipalities depending on the collection of taxes charged on the tax roll. (p. 67.)

. . . . . . . . . . . . . .

". . . If the courts or the tax commission had power to interfere generally a year or more after valuation and assessment have been completed and taxes have been levied accordingly, there would be no certainty or stability to the public revenues provided for a given year." (p. 69.)

Although the director has wide discretion in the exercise of the powers granted him by K. S. A. 79-1404 (*Sixteenth*), and the legislature saw fit not to restrict him by the imposition of arbitrary time limitations, still, the time for taking action is necessarily circumscribed by the total legislative scheme of taxation. The director's

order of December 15, 1967, clearly violates this fundamental principle. In our opinion, the provisions of the statute do not contemplate the director's issuance of an order affecting assessment valuations of all gas-producing properties in an entire county at a time when the assessment and the levy phases of the taxing process for the year are completed and the collection phase is well underway. Any attempt to equalize assessments by changing valuations of an entire class of property after November 1 of a given year comes too late. Otherwise, an order of such proportions would virtually destroy the certainty and stability required in our taxing system.

The legislature, in establishing an orderly scheme of taxation for a given year, has recognized that there must be a cutoff date (November 1) as a matter of practical necessity. (*State, ex rel., v. Dwyer*, 204 Kan. 3, 460 P. 2d 507.) The task of equalizing assessments by county Boards of Equalization (K. S. A. 79-1602 [since amended]) and the state Board of Equalization (K. S. A. 79-1409 [since amended]) is required to be accomplished within definite time limitations. We believe the fair import of the provisions of K. S. A. 79-1404 (*Sixteenth*), when read with the overall legislative timetable, necessitates that equalization action be taken by the director before the date on which taxes are due for a given year.

The director is under legislative mandate to exercise general supervision and direction over assessing authorities to the end that all assessments of property be made relatively just and uniform. (See, *McManaman v. Board of County Commissioners*, 205 Kan. 118, 468 P. 2d 243.) In order to have available adequate information to take whatever timely action he deems necessary, he has authority to promulgate regulations to insure that such information is furnished by local officials. (K. S. A. 79-1441.)

Under the facts here, the director, after conducting a complete investigation, was fully advised in September of the action taken by the County Board of Equalization in May. Armed with this information, he had ample opportunity to move out and issue an appropriate order before taxes became due on November 1, just as this court did in *Mobil Oil Corporation v. McHenry*, supra.

The judgment is affirmed.